UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| INTELLECTUAL VENTURES I LLC & | ) | |
| INTELLECTUAL VENTURES II LLC | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:16–cv–196–JRG |
| | ) | |
| J. CREW GROUP, INC. | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## J. CREW'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant J. Crew Group, Inc. ("J. Crew") moves to dismiss the patent infringement complaint ("Complaint") (ECF No. 1) of Plaintiffs Intellectual Ventures I LLC ("IV I") and Intellectual Ventures II LLC ("IV II") (collectively "Intellectual Ventures") for failure to state a claim upon which relief can be granted.

### STATEMENT OF THE ISSUES

1.      Whether the claims of asserted U.S. Patent No. RE43,715 ("'715 Patent") are drawn to patent–ineligible subject matter under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014);

2.      Whether the claims of asserted U.S. Patent No. 6,782,370 ("'370 Patent") are drawn to patent–ineligible subject matter under Section 101 and *Alice*; and

3.      Whether the claims of asserted U.S. Patent No. 5,969,324 ("'324 Patent") are drawn to patent–ineligible subject matter under Section 101 and *Alice*.

## BACKGROUND

In brief, Intellectual Ventures accuses J. Crew of direct infringement of representative claims of three patents by two unrelated instrumentalities: the third–party recommendations functionality of J. Crew's retail website and the third–party point–of–sale system at J. Crew's retail stores. *See* Complaint ¶¶ 27–50.

**Allegations under the '715 Patent.** Intellectual Ventures alleges that the '715 Patent, ECF No. 1–1, was reissued on October 2, 2012, from U.S. Patent No. 6,941,376, and assigned to IV I. *See id.* ¶¶ 13–14. Intellectual Ventures further alleges that J. Crew infringes representative claim 20 through its "implementation and use of recommendations on its internet shopping website www.jcrew.com." *Id.* ¶ 27. Intellectual Ventures elsewhere identifies the recommendations functionality on the J. Crew website as the "Baynote Recommendations solution," a third–party product. *Id.* ¶ 35.

**Allegations under the '370 Patent.** Intellectual Ventures alleges that the '370 Patent, ECF No. 1–2, was issued on August 24, 2004, and assigned to IV II. *See* Complaint ¶¶ 15–16. Intellectual Ventures further alleges that J. Crew directly infringes representative claim 1 through its "system(s) used to implement Baynote Recommendations solution." *Id.* ¶ 35.

**Allegations under the '324 Patent.** Finally, Intellectual Ventures alleges that the '324 Patent, ECF No. 1–3, was issued on October 19, 1999, and assigned to IV I. *See id.* ¶¶ 17–18. Intellectual Ventures further alleges that J. Crew directly infringes representative claim 1 through its "implementation and use of non–predictable barcodes with its point–of–sale system, including its Epicor CRS Retail Store POS solution," a third–party product. *Id.* ¶ 43.

For ease of exposition, J. Crew begins with the applicable legal standards, then addresses the subject–matter ineligibility of each asserted patent in turn.

## LEGAL STANDARDS

**Motion to Dismiss Standard.** After accepting all well–pleaded facts as true, "the Court determines whether the complaint alleges 'enough facts to state a claim to relief that is plausible on its face.'" *Clear With Computers, LLC v. Dick's Sporting Goods, Inc.*, 2014 WL 923280, \*2 (E.D. Tex. Jan. 21, 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Documents attached to the Complaint—here, the asserted patents—are part of the pleadings, and may be reviewed in ruling on a motion to dismiss. See *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

**Section 101 Standard.** The question whether a patent claims eligible subject matter may be decided on the pleadings. *See, e.g., Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *NexusCard, Inc. v. The Kroger Co.*, 2016 WL 1162180 (E.D. Tex. Mar. 24, 2016) (Gilstrap, J.); *Clear With Computers, LLC v. Altec Indus., Inc.*, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) (Gilstrap, J.); *Loyalty Conversion Systems, Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829 (E.D. Tex. 2014) (Bryson, J., sitting by designation); *Dick's Sporting Goods*, 2014 WL 923280; *see also eDekka LLC v. 3Balls.com, Inc.*, 2015 WL 5579840 (E.D. Tex. Sept. 21, 2015) (Gilstrap, J.). It is, in fact, preferable for legal, policy, and prudential reasons to resolve this threshold issue as early as possible.

> Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents. Accordingly, where, as here, asserted claims are plainly directed to a patent

ineligible abstract idea, [the Federal Circuit has] repeatedly sanctioned a district court's decision to dispose of them on the pleadings.

*OIP Techs.*, 788 F.3d at 1364–65 (Mayer, J., concurring) (collecting cases) (brackets added).

Claim construction is not a prerequisite to the resolution of the Section 101 issue. *See Ultramercial*, 772 F.3d at 719; *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *Dick's Sporting Goods,* 2014 WL 923280, at *3–*4. To the extent a motion arguably implicates disputed claim constructions, a court may apply constructions favorable to the patent–owner. *See Content Extraction & Transmission LLC v. Wells Fargo, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Further, a court may base its ruling on the analysis of a representative claim, even without the agreement or consent of the parties. *See Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 n.6 (Fed. Cir. Jan. 20, 2016); *eDekka*, 2015 WL 5579840 at *2; *NexusCard*, 2016 WL 1162180 at *2 n.1.

**The *Alice* Test.** "[A]bstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (brackets added). In *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012), and *Alice*, the high court has set out the two–part test to assess the subject matter–eligibility of a patent claim.

The focus of the analysis is the language of the claims. *See Alice*, 134 S. Ct. at 2355; *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). Concreteness in the specification cannot cure abstractness in the claims. *Dick's Sporting Goods*, 2014 WL 923280 at *5. So, at Step One, the Court must "determine whether the claims at issue are directed to patent–ineligible concepts." *Alice*, 134 S. Ct. at 2355. To do so, the Court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional

elements transform the nature of the claim into a patent–eligible application." *Id.* (quotations omitted).

If the claims are drawn to a patent–*in*eligible concept, such as an abstract idea, then Step Two requires the Court to "search for the inventive concept—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (quotation and brackets omitted). At this step, it is not enough for the patent applicant to point to an abstract idea and tell the reader to "apply it." *Id.* at 2357. An ineligible abstract idea cannot be made eligible by restricting its field of use. *Id.* at 2358. Nor is it sufficient to add "token postsolution components" to the abstract idea. *Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010); *see Ultramercial*, 772 F.3d at 715. Nor is "[t]he introduction of a computer into the claims" enough to alter the analysis. *Alice*, 134 S. Ct. at 2357 (brackets added). "[T]he mere recitation of a generic computer cannot transform a patent–ineligible abstract idea into a patent–eligible invention." *Id.* at 2358 (brackets added). "Nor, in addressing the second step of *Alice*, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept." *Intellectual Ventures I, LLC v. Capital One Fin. Corp.*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

In *Loyalty Conversion*, Circuit Judge Bryson, sitting in this district by designation, limned the features of subject matter–ineligible claims drawn to abstract ideas:

> (1) they recite methods for performing a commonplace business function—such as currency conversion, hedging, or employing intermediated settlement in a financial transaction—typically by using a computer system or computer components to perform those methods; (2) they are aspirational in nature in that they describe the business function, but do not describe any novel manner of performing that function other than referring to the use of routine operations performed by a specially program[m]ed computer; and (3) the recitations referring to the use of a computer do not include any inventive measure that "purport[s] to improve the functioning of the computer itself." *CLS Bank*, 134 S. Ct. at 2359….

> In short, such patents, although frequently dressed up in the argot of invention, simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of the steps. The principal flaw in these patents is that they do not contain an "inventive concept" that solves practical problems and ensures that the patent is directed to something "significantly more than" the ineligible abstract idea itself. *See CLS Bank*, 134 S. Ct. at 2355, 2357; *Mayo*, 132 S. Ct. at 1294.

66 F. Supp. 3d at 845 (ellipsis added).

It is an open question whether there is a presumption of subject–matter eligibility analogous to the presumption that applies to validity challenges under 35 U.S.C. §§ 102, 103, or 112. None of the recent Supreme Court cases on patent–eligibility has mentioned, much less applied, such a standard. *See Ultramercial*, 772 F.3d at 720–21 (Mayer, J., concurring). Moreover, "[t]he determination of whether a claim is drawn to patent–eligible subject matter is a pure question of law." *Kickstarter, Inc. v. Fan Funded, LLC*, 2015 WL 3947178, *5 (S.D.N.Y. June 29, 2015) (brackets added and citations omitted). In ruling on a motion to dismiss, a court draws legal conclusions based on facts pled by and viewed in the light most favorable to the non–movant. *See id*. at *5 n.7. Accordingly, a reviewing court "does not have occasion to weigh facts using the 'clear and convincing' evidentiary standard." *Id*. The Court need not resolve the burden–of–proof question to rule for J. Crew. The conclusion that the claims of the asserted patents are subject–matter ineligible does not change no matter how many thumbs are pressed on the scale in favor of Intellectual Ventures.

## ARGUMENT

## I.   THE '715 PATENT CLAIMS THE ABSTRACT IDEA OF COMBINING DATA FROM TWO SOURCES.

The '715 Patent is entitled, "System and Method for Integrating Public and Private Data." The field of the invention is "the display of data available over a network." '715 Patent, 1:31–32. The perceived need for the invention is "for systems that allow a user to simultaneously access and view public and private data on the same network interface device or system, such as a web

page, wireless screen, other digital viewing device or printer." '715 Patent, 2:52–55. The invention described is "[a] system and method for allowing an Internet user to create a web page which may simultaneously supply public and private data as integrated data on one digital screen or other network interface device." '715 Patent, Abstract (brackets added). It is elsewhere characterized as a system that "facilitates the simultaneous access and viewing of public and private data by integrating the two forms of data." '715 Patent, 2:66–67.

Because the invention resides in the claims, we turn to representative claim 20, which J. Crew has been accused of directly infringing:

---

20. A method of integrating and delivering data available over a network, said method including the steps of:

[a] acquiring public data from at least one publicly available data store coupled to said network, wherein said public data is determined by private data;

[b] acquiring said private data from at least one private data store coupled to said network;

[c] integrating said public data and said private data to form integrated data; and

[d] delivering said integrated data to a user system.

'715 Patent, 15:7–16 (brackets added).

---

**Step One: Abstract Idea.** To paraphrase, the method of claim 20 for integrating and delivering data is to (a) acquire public data from storage accessible over a network, (b) acquire private data from storage accessible over a network, (c) combine those data, and (d) deliver them to a user on, *e.g.*, a computer screen. *See also* '715 Patent, Fig. 6. The actions claimed— acquiring, integrating, and delivering—are wholly generic computer functions. *See Content Extraction & Transmission*, 776 F.3d at 1347 (affirming subject–matter ineligibility of claim to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that data in a memory"). *Internet Patents*, 790 F.3d at 1348 (affirming subject–matter ineligibility of

the "idea of retaining information in the navigation of online forms"). Further, these terms are not specially defined in the claims or specification, confirming that the relevant terms "acquiring," "integrating," and "delivering" are not being used in any specially–defined sense.

Neither the claim nor the specification requires special–purpose computing equipment. To the contrary, the text speaks broadly of generic computer equipment generically configured. *See* '715 Patent, 3:58–4:1. The "network" "of the present invention," '715 Patent, 4:47–48, is "any system for exchanging data or transacting business, such as the Internet, an intranet, an extranet, WAN, LAN, VPN (virtual private network), satellite communications, and/or the like." '715 Patent, 4:48–52. Strictly speaking, this expansive definition would include the use of bicycle messengers to exchange data or transact business. The language to describe the computer equipment used by the user is equally generic.

> The users may interact with the system via any input device such as a keyboard, mouse, kiosk, personal digital assistant, handheld computer, cellular phone and/or the like. Similarly, the invention could be used in conjunction with any type of personal computer, network computer, workstation, mini–computer, mainframe, or the like running any operating system….

'715 Patent, 4:55–61; *see also id.*, 4:1–7. So too, the data storage is described in terms of generic databases "including client data, merchant data, financial institution data and/or the like data." '715 Patent, 3:65–67. "The data storage devices for the backend systems may be *any type of data storage device*, such as relational, hierarchical, object–oriented, and/or the like." '715 Patent, 5:51–53 (emphasis added).

In sum, the method of claim 20 describes generic computer equipment generically disposed performing the generic steps of acquiring generically stored data from two locations, integrating them, and displaying them on screen or in print.

**Step Two: No Inventive Concept.** The only arguably differentiating feature of representative claim 20 is the attempted distinction between "public data" and "private data."

The specification of the '715 Patent cites "items in a catalogue" as an example of public data and an "order form including purchase information" as an example of private data. '715 Patent, 2:15–18. Another example of "public data," drawn from the field of banking or finance, is "information on card membership rewards and on applying for another card," or "market index graphs." '715 Patent, 9:12–14. By contrast, "private data" might include "current balances, recent payments and membership rewards points available." '715 Patent, 9:16–17. The private–data/public–data distinction cannot supply the needed inventive concept because it is a distinction based on the content of the information. What distinguishes private from public data is not specialized equipment used to acquire, integrate, or display them, but rather whether the information is of a private or public nature, the difference between a bank balance (private) and the terms and conditions associated with a bank account (public).

In *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the Federal Circuit determined a computer–implemented method to be patent–eligible because the claims recited a specific manipulation of a general–purpose computer, not a "computer network operating in its normal, expected manner." *Id*. at 1258–59. Unlike patent–ineligible claims, "the claims at issue [in *DDR Holdings*] specif[ied] how interactions with the Internet are manipulated to yield a desired result——a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink." *Id*. at 1258 (brackets added). Such a technological innovation is not present here. As the specification recites, "Integrated data **204** comprises at least one item of public data and at least one item of private data." '715 Patent, 6:37–38. But both kinds of data can be accessed through any form of data service. "Public access bean **418** can be any form of public data service and private data access bean **420** can be any form of private data service." '715 Patent, 12:17–19. And "it will be understood to one skilled in

the art that any number of combinations of public and private data may be accessed and viewed on a user system **126** according to various embodiments of the present invention." '715 Patent, 9:18–22.

In the end, the requirement that some data be from a bucket labeled "private" and some from a bucket labeled "public" is essentially a field restriction on the kinds of data to be acquired, integrated, and delivered, which *Alice* teaches cannot render an abstract idea patent– eligible. *See* 134 S. Ct. at 2358. Nothing in the claim language, nor even the specification, adds the requisite "something more" to the abstract idea of taking data from two sources and displaying them together.

Claim 20 is representative of all claims of the '715 Patent because the other claims add at most "token postsolution components" to the underlying abstract idea. *Bilski*, 130 S. Ct. at 3231. Some specify the use of one kind of generic computer equipment or another (a personal computer, a personal digital assistant, or a wireless telephone), a generic "browser configured to communicate over a network," or a generic "network interface device." '715 Patent, 15:37–53. Others require that "private data" be "private transactional data," a further field of use restriction. '715 Patent, 15:58–59. Still others rely on something called a "personal profile utility." '715 Patent, 15:25–36. In the only appearance of the term in the specification, however, the patentees make plain that a "personal profile utility" is not limited to or by any technology, but "may include a personal profile data store **124** and/or a personal preferences data store and/or *any other suitable means* for storing and accessing personal profile data." '715 Patent, 9:53–56 (emphasis added). As with "public data" and "private data," a "personal profile" is simply a classification of the content of certain data that may be stored by any suitable means for data storage.

Finally, the system ('715 Patent, 13:37–15:6, 15:63–17:27) and computer readable medium ('715 Patent, 15:28–18:3) claims fall with the method claims. An applicant may not render an abstract idea patent–eligible simply by selecting a different claim type. Whether the idea is expressed in a method claim, a system claim, or a computer media claim, a claim that expresses an abstract idea that does not "amount[] to significantly more than a patent upon the ineligible concept itself" is not patent–eligible. *Alice*, 134 S. Ct. at 2360 (brackets added). Holding otherwise would render patent–eligibility dependent not on the inventive concept expressed in the patent's claims, but rather on the draftsman's art, a result the Supreme Court has repeatedly warned against. *See id*. The system and computer readable medium claims of the '715 Patent do not materially differ from the method claims, and so are equally subject–matter ineligible.

## II. THE '370 PATENT CLAIMS THE ABSTRACT IDEA OF RECOMMENDING PRODUCTS TO CUSTOMERS BASED ON PAST PURCHASES.

The '370 Patent is entitled, "System and Method for Providing Recommendation of Goods or Services Based on Recorded Purchasing History." The field of the invention

> relates to the use of computer systems to facilitate the recommendation of goods or services utilizing a distributed network such as the Internet, specifically to provide recommendations of goods or services that may be of interest to potential customers based on a potential customers' selection of goods or services and a database of previous customer history with respect to selected goods or services.

'370 Patent, 1:9–16. The proposed invention is "[a] method for recommending goods or services…which allows the user of a computer system connected to a distributed network such as the Internet to receive recommendations of goods or services of potential interest based on a particular good or service selected by the user and previous customer buying history." '370 Patent, 1:43–48 (brackets and ellipsis added).

11

As demonstrated by representative claim 1, which J. Crew has been accused of directly infringing, the '370 Patent is a classic effort at the add–computer–and–patent gambit foreclosed by the Supreme Court in *Alice*:

> 1. A computer–implemented method for the recommendation of goods and/or services to potential customers over a distributed network based on customer buying history utilizing an information processing system containing processing means having transmission means for receiving and transmitting data, and database storage means for storing information in database files, the method comprising the steps of:
>
> > [a] receiving customer commands specifying a particular good or service to be used as filter data;
> >
> > [b] storing information pertaining to goods and/or services purchasing history of previous customers;
> >
> > [c] comparing said filter data with said stored information and determining whether, for said filter data, corresponding entries exist within the stored information; and
> >
> > [d] if corresponding entries exist, displaying the identity of other goods and/or services purchased by said previous customers who have purchased the good and/or service used as said filter data.
>
> '370 Patent, 4:42–61 (brackets added).

**Step One: Abstract Idea.** Whether or not one reads the preamble as limiting, the elements of claim 1 instruct the reader to implement certain basic functions—(a) receiving information; (b) storing information; (c) comparing information; and (d) displaying information—on a computer. *See Content Extraction & Transmission*, 776 F.3d at 1347 (affirming subject–matter ineligibility of claim to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that data in a memory"). *Internet Patents*, 2015 WL 3852975 at *5 (affirming subject–matter ineligibility of the "idea of retaining information in the navigation of online forms"). Indeed, if one sets aside the preamble, the *claimed* method claims steps that could be performed by a sales clerk in a hardware store with a filing cabinet of stored

records of past purchases. That clerk could receive a request from a customer for, *e.g.*, a garden hose. She could consult a stored list, index, or other record of past purchases to learn that customers who buy garden hoses often buy nozzles or sprinkler attachments to go with them. She could then suggest to the customer that he might be interested in buying a spray nozzle or sprinkler attachment to go with his garden hose. The clerk would then have performed the steps of the claimed method.

**Step Two: No Inventive Concept.** As *Alice* teaches, "the mere recitation of a generic computer cannot transform a patent–ineligible abstract idea into a patent–eligible invention." 134 S. Ct. at 2358 (brackets added). But computer–implementation is the only arguably inventive concept to be found anywhere in the claim. Further, as Intellectual Ventures knows from its own litigation history, the fact that a computer can perform the functions of a human faster or more efficiently does not bring a patent's claims within the domain of patent–eligibility. *Intellectual Ventures*, 792 F.3d at 1367 ("Nor, in addressing the second step of *Alice*, does claiming the improved speed or efficiency inherent with applying the abstract idea on a computer provide a sufficient inventive concept."). What matters, rather, is whether the claim provides something more than "a computer network operating in its normal, expected manner." *DDR Holdings*, 773 F.3d at 1258–59.

Claim 1 of the '370 Patent can make no such claim. If one assumes for the sake of argument—and in Intellectual Ventures' favor—that the preamble requiring computer–implementation is limiting, the claimed computer–implementation is still wholly generic. *Cf. PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 752 (Fed. Cir. 2016) ("The purpose of a preamble is to set forth the general nature of the invention being claimed. It is generally not used as or intended to be a limiting factor in delineating boundaries of

the scope of the invention as claimed."). The preamble makes reference to the following generic elements of computer–implementation: a "distributed network;" an "information processing system;" and "database storage." '370 Patent, 4:42–49. The specification is clear that the "distributed network" can be the Internet, but also "any communication medium…including distributed networks such as Local Area Networks (LANs), Wide Area Network (WANs), or Electronic Bulletin Board Systems (BBSs)." '370 Patent, 2:33–37; *see also id*., 4:63–5:2 (dependent claims reciting various distributed networks). The specification does not describe the "information processing system," and thus it cannot be considered a piece of equipment or technology specific to the claimed invention. Nor does the specification describe the "database storage." The specification does make mention of a "customer purchasing history database," but that is nothing more than a "database **4** which stores data describing all purchases of previous customers." '370 Patent, 2:61–62. Regardless of what is—or is not—to be found in the specification, the *claim* language, which is the subject of the Section 101 analysis, does not purport to describe anything other than "a computer network operating in its normal, expected manner." *DDR Holdings*, 773 F.3d at 1258–59. Even reading the preamble as limiting, claim 1 of the '370 Patent does not contain an inventive concept, but rather instructions to perform a method on a computer or over the Internet or other network.

Claim 1 is representative of all claims of the '370 Patent because the other claims add nothing more than "token postsolution components" to the underlying abstract idea. *Bilski*, 130 S. Ct. at 3231. Dependent claims simply specify certain types of generic distributed networks: the Internet, a Local Area Network; a Wide Area Network; or a Bulletin Board System. '370 Patent, 4:63–5:2. The remaining dependent method claim limits the kinds of goods for sale to "books." '370 Patent, 5:3. Such a field of use restriction does not render the claim patent–

eligible. *Alice*, 134 S. Ct. at 2358. Further, for reasons discussed above, the system ('370 Patent, 5:3–6:15) and computer readable medium ('370 Patent, 5:16–28) claims fall with the method claims. *See Alice*, 134 S. Ct. at 2360.

## III.   THE '324 PATENT CLAIMS THE ABSTRACT IDEA OF RETRIEVING TRANSACTION RECORDS.

The '324 Patent is entitled, "Accounting Methods and Systems Using Transaction Information Associated with a Nonpredictable Bar Code." The field of the invention "relates to methods, systems, and devices for electronic recordkeeping of accounting data." '324 Patent, 1:31–32. The invention claims to address a defect in the prior art in the recordkeeping of accounting data, *viz.*, "that many transactions have to be manually entered from a receipt obtained from a point of sale." '324 Patent, 1:45–46. In response, "[e]mbodiments of the present invention advantageously provide automated approaches for entering transaction information associated with a receipt." '324 Patent, 2:33–35 (brackets added). In sum, the patent purports to improve record–keeping of retail transactions by doing so electronically—that is, on a computer. How it is to do so must be set forth in the claims, which is where the '324 Patent founders on the shoal of subject–matter eligibility.

J. Crew has been accused of infringing representative claim 1:

---

1. A database management method comprising the steps of:

> [a] receiving and storing transaction information associated with a nonpredictable bar code, the transaction information generated by a transaction terminal;

> [b] receiving a request for the transaction information including data associated with the nonpredictable bar code;

> [c] retrieving the transaction information based upon the nonpredictable bar code; and

> [d] communicating the transaction information.

'324 Patent, 11:22–31.

---

**Step One: Abstract Idea.** The claimed method involves (a) receiving and storing certain information; (b) receiving a request for that information; (c) retrieving that information; and (d) communicating that information. None of these steps is described in technical terms or in connection with special–purpose equipment, but solely with respect to a desired outcome. Save for references to a "transaction terminal" and a "nonpredictable bar code"—on which more below—the underlying invention makes no reference to computer–implementation. A human being could receive and store transaction information, retrieve that information upon request, and communicate the information so retrieved.

The Federal Circuit has affirmed the rejection of these types of claims as subject–matter ineligible in other cases. *See Content Extraction & Transmission*, 776 F.3d at 1347 (affirming subject–matter ineligibility of claim to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that data in a memory"). *Internet Patents*, 2015 WL 3852975 at *5 (affirming subject–matter ineligibility of the "idea of retaining information in the navigation of online forms"). This is the kind of functional claiming described by Judge Bryson in *Loyalty Conversion* as the hallmark of a claim to an abstract idea. *See* 2014 WL 4364848 at *13 ("In short, such patents, although frequently dressed up in the argot of invention, simply describe a problem, announce purely functional steps that purport to solve the problem, and recite standard computer operations to perform some of the steps."). Absent something "significantly more" than a recitation of desired functions and outcomes, the claim does not survive the *Alice* test. 134 S. Ct. at 2355

**Step Two: No Inventive Concept.** There can be no doubt that the claimed computer equipment is generic. Such equipment is described throughout in open–ended terms, as A, B, C, or the like. The "transaction terminal" is "a point of sale terminal **20** or *a like apparatus* at a

transaction point," and "includes at least one input device **22** *such as* a keyboard, a bar code reader, and/or a card reader for entering transaction data at a point of sale." '324 Patent, 2:42–47 (emphasis added); *see also id.*, 6:31–33 ("The point of sale terminal **20** can comprise a computer terminal, a card reader, and a printer to print the transaction receipt **26**."). Neither the claims nor specification provides technical detail that would render the terminal a special–purpose device. Other than the generation of the transaction information at this generic terminal, no other equipment is specified *in the claim* for performing the functions of receiving and storing such information, receiving a request for such information, or communicating such information. *See*, *e.g.*, '324 Patent, 5:44–46 ("The transaction information can be entered by a keypad, a bar code reader, a magnetic stripe reader, *and/or received by a receiver*."); 6:1–2 ("The transaction data is communicated by the transceiver **42** to the computer **44** using either the electronic network **52** or *another communication link*."); 6:16–18 ("The computer **44** stores the data in the database **50**.") (emphasis added). For each element, the reader receives no instruction on how the claimed invention purports to perform the functions described other than by generic reference to the kind of equipment that would perform that sort of function. For example, information can be "received by a receiver," that is, something that receives. Such characterizations do not concretize the abstract idea because this language does nothing to instruct the reader how specifically these functions are to be (or could be) performed. The claim language is even vaguer than the specification, wholly "aspirational in nature," describing the desired result without offering an account of how that result might practically be achieved. *Loyalty Conversion*, 66 F. Supp. 3d at 845.

Because there is none but generic computer equipment claimed, the only other arguable source of an inventive concept in the claim is the non–predictable bar code. Although the

specification only "preferably" provides for a non–predictable bar code, '324 Patent, 2:35, 3:18–19, claim 1 does require its use. The specification makes plain, however, that the patentees are not claiming that the generation or use of a non–predictable bar code is an element of their invention. To the contrary, non–predictable bar codes were admittedly known in the prior art.

> A nonpredictable bar code can be formed by converting a nonpredictable series of numeric characters or a nonpredictable series of alphanumeric characters to a bar code representation in accordance with a bar code standard. A nonpredictable bar code can be formed by converting a nonpredictable series of numeric characters or a nonpredictable series of alphanumeric characters to a bar code representation in accordance with a bar code standard. A nonpredictable series of characters can be formed by any of the code generators described in U.S. Pat. Nos. 4,599,489, 4,720,860, and 5,168,520 which are hereby incorporated by reference into this disclosure.

'324 Patent, 3:19–27. No specific equipment is described. '324 Patent, 3:37–41 ("A nonpredictable code can be generated by a processor **40** at the point of sale terminal **20** or by a remote processor. The processor **40** can include a microprocessor, an application– specific integrated circuit, a custom integrated circuit, *or the like* to generate the nonpredictable code."); *see also id*., 5:52–54 ("The nonpredictable code can be generated by the point of sale terminal **20** or received from an external code generator.") (emphasis added). And the bar code is generated according to accepted standards, not a special means set out in the patent. '324 Patent, 3:48–51 ("Regardless of where the nonpredictable code is generated, the processor **40** provides means for encoding the nonpredictable code in accordance with a bar code standard to form the nonpredictable bar code."). In short, the '324 Patent discloses no inventive concept—no special–purpose computer equipment or even a specialized use of such equipment—that would render it subject–matter eligible.

Claim 1 is representative of all claims of the '324 Patent because the other claims add nothing more than "token postsolution components" to the underlying abstract idea. *Bilski*, 130 S. Ct. at 3231. Other method claims simply specify certain types of networks: the Internet, an

intranet, or an "electronic network." '324 Patent, 11:32–37. Or they place non–technical content restrictions on the bar codes. *See* '324 Patent, 11:38–52. Or they add generic elements of printing a receipt or storing transaction information. *See* '324 Patent, 12:29–50. Such restrictions do not render the abstract idea patent–eligible any more than the elements of representative claim 1. *Alice*, 134 S. Ct. at 2358. Finally, for reasons already discussed, the system claims ('324 Patent, 12:1–28) fall with the method claims. *See Alice*, 134 S. Ct. at 2360.

*     *     *

However desirable the functions or features described in the '715, '370, and '324 Patents may be, the claims of these patents do not describe a patent–eligible method for implementing or achieving them. They suffer from the fundamental flaw *Alice* sought to root out—taking time–worn concepts and instructing a reader to apply them "on a computer." "With the approach to this kind of section 101 issue clarified by *Alice*, it is a straightforward matter to conclude that the claims in this case are invalid." *buySAFE*, 765 F.3d at 1355.

## CONCLUSION

Based on the foregoing, J. Crew respectfully requests that the complaint against it be dismissed.

Dated: May 5, 2016

Jennifer Parker Ainsworth
Tex. Bar No. 00784720
WILSON, ROBERTSON &
CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
Tyler, TX 75701
Tel: (903) 509–5000
Fax: (903) 509–5092
jainsworth@wilsonlawfirm.com

/s/ David Swetnam–Burland
Peter J. Brann
David Swetnam–Burland
Stacy O. Stitham
BRANN & ISAACSON
184 Main Street, 4th Floor
Lewiston, ME 04243−3070
Tel: (207) 786−3566
Fax: (207) 783−9325
pbrann@brannlaw.com
dsb@brannlaw.com
sstitham@brannlaw.com

*Counsel for Defendant J. Crew Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon counsel of record on May 5, 2016, by filing this document using the CM/ECF system.

/s/ David Swetnam–Burland
David Swetnam–Burland

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S
## 35 U.S.C. § 101 MOTION PRACTICE ORDER

Pursuant to the Court's Order, the parties state that they disagree on whether prior claim

construction is not needed to inform the Court's analysis as to patentability.

/s/ Peter J. Brann
*Lead Counsel for Defendant*
*J. Crew Group, Inc.*