**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC & §<br>INTELLECTUAL VENTURES II LLC, §<br>   §<br>  *Plaintiffs*, §<br>   §<br>v. §<br>   §<br>J. CREW GROUP, INC., §<br>   §<br>  *Defendant*. §<br>   § | CASE NO. 6:16-CV-196-JRG<br>(LEAD CASE) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant J. Crew Group, Inc.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 11, "Mot."). J. Crew contends that the patents asserted by Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively, "Intellectual Ventures") are drawn to patent-ineligible subject matter under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). On July 13, 2016, the Court heard argument from the parties on the motion. Having carefully considered the patents-in-suit and the parties' positions, the Court is persuaded that the claims of U.S. RE43,715 and U.S. Patent No. 6,782,370 are directed to patent-ineligible subject matter, and the claims of U.S. Patent No. 5,969,324 are not directed to patent-ineligible subject matter . Accordingly, J. Crew's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

On March 8, 2016, Intellectual Ventures filed a complaint for patent infringement against J. Crew and asserted three patents: U.S. RE43,715 ("the '715 Patent"), U.S. Patent No. 6,782,370 ("the '370 Patent"), and U.S. Patent No. 5,969,324 ("the '324 Patent"). On the same day, Intellectual Ventures filed a complaint for patent infringement against Florists' Transworld Delivery, Inc. ("FTD") (Case. No. 6:16-cv-195, Dkt. No. 1.) Intellectual Ventures alleges that FTD also infringes the '370 Patent and the '324 Patent. The Court later consolidated these two cases. (Dkt. No. 24.)

### A. The '715 Patent

The '715 Patent, titled System and Method for Integrating Public and Private Data, discloses a system and a method for allowing an internet user to create a web page which may simultaneously display public and private data as integrated data on one digital screen or other network device.

Though the '715 Patent contains system and method claims, the Court finds that claim 20 is representative. Claim 20 recites:

> **20.** A method of integrating and delivering data available over a network, said method including the steps of:
> acquiring public data from at least one publicly available data store coupled to said network, wherein said public data is determined by private data;
> acquiring said private data from at least one private data store coupled to said network;
> integrating said public data and said private data to form integrated data; and
> delivering said integrated data to a user system.

### B. The '370 Patent

The '370 Patent, titled System and Method for Providing Recommendations of Goods or Services Based on Recorded Purchasing History, discloses a system and a method using a

network for the recommendation of goods and services based on a potential customer's selection of goods and services and a database of previous customer purchase history.

Though the '370 Patent contains system and method claims, the Court finds that claim 1 is representative. Claim 1 recites:

> **1.** A computer-implemented method for the recommendation of goods and/or services to potential customers over a distributed network based on customer buying history utilizing an information processing system containing processing means having transmission means for receiving and transmitting data, and database storage means for receiving and transmitting data, and database storage means for storing information in database files, the method comprising the steps of:
> > receiving customer commands specifying a particular good or service to be used as filter data;
> > storing information pertaining to goods and/or services purchase history of previous customers;
> > comparing said filter data with said stored information and determining whether, for said filter data, corresponding entries exist within the stored information; and
> > if corresponding entries exist, displaying the identity of other goods and/or services purchased by said previous customers who have purchased the good and/or services used as said filter data.

### C. The '324 Patent

The '324 Patent, titled Accounting Methods and Systems Using Transaction Information Associated with a Nonpredictable Bar Code, discloses a system and method for storing and retrieving transaction information via a nonpredictable barcode. The '324 Patent discloses, as a preferred embodiment, a point-of-sale transaction system that utilizes a nonpredictable barcode in connection with generating information related to the transaction, storing that data, and retrieving it form a remote computer system. Additionally, the '324 Patent requires that the transaction data be tied to a nonpredictable barcode, which can help prevent unauthorized access to the transaction data.

Though the '324 Patent contains system and method claims, the Court finds that claim 1 is representative. Claim 1 recites:

> **1.** A database management method comprising the steps of:
>   receiving and storing transaction information associated with a nonpredictable bar code, the transaction information generated by a transaction terminal;
>   receiving a request for the transaction information including data associated with the nonpredictable bar code;
>   retrieving the transaction information based upon the nonpredictable bar code; and
>   communicating the transaction information.

## LEGAL STANDARD

### A. Rule 12(b)(6)

A party may move to dismiss a claim for a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When a Court considers a Rule 12(b)(6) motion it must assume that all well-plead facts are true and must view them in a light most favorable to the non-moving party. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 218 (5th Cir.2012). The Court must decide whether those facts state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bowlby*, 681 F.3d at 217 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The question whether a patent claims subject matter may be decided on the pleadings. *See, e.g.*, *NexusCard, Inc. v. The Kroger Co.*, 2016 WL 1162180 (E.D. Tex. Mar. 24, 2016).

### B. Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act defines scope of patent eligible subject matter:

> Whoever invents or discovers any new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

4

The Supreme Court has held that there are three specific exceptions to patent eligibility under § 101: laws of nature, natural phenomena, and abstract ideas. *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). In *Mayo*, the Supreme Court articulated a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296–97 (2012)).

The first step of *Mayo* requires a court to determine if the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. "If not, the claims pass muster under § 101." *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 714 (Fed. Cir. 2014). In making this determination, the court looks at what the claims cover. *Ultramercial*, 772 F.3d at 714–15 ("We first examine the claims because claims are the definition of what a patent is intended to cover."); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015) ("At step one of the *Alice* framework, it is often useful to determine the breadth of the claims in order to determine whether the claims extend to cover a 'fundamental . . . practice long prevalent in our system . . . .'").

For example, in *Bilski*, the Supreme Court rejected as patent-ineligible "Claims 1 and 4 in petitioners' application" because the claims simply "explain[ed] the basic concept of hedging, or protecting against risk." *Bilski*, 561 U.S. at 611. Similarly, in *Ultramercial*, the Federal Circuit found patent ineligible a claim that included "eleven steps for displaying an advertisement in exchange for access to copyrighted media." *Ultramercial*, 772 F.3d at 714. In *Intellectual Ventures*, the Federal Circuit held that a claim that contained steps "relat[ing] to customizing information based on (1) information known about the user and (2) navigation data." *Intellectual*

5

*Ventures*, 792 F.3d at 1369.

A court applies the second step, per *Mayo*, only if it finds as part of the first step that the claims are directed to a law of nature, natural phenomenon, or abstract idea. *Alice*, 134 S. Ct. at 2355. Such a second step requires the court to determine if the elements of the claim individually, or as an ordered combination, "transform the nature of the claim" into a patent-eligible application. *Alice*, 134 S. Ct. at 2355. In determining if the claim is transformed, "[t]he cases most directly on point are *Diehr* and *Flook*, two cases in which the [Supreme] Court reached opposite conclusions about the patent eligibility of a process that embodied the equivalent of natural laws." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012); *see also Alice*, 134 S. Ct. at 2355 ("We have described step two of this analysis as a search for an 'inventive concept.'").

In *Diehr*, the Court "found [that] the overall process [was] patent eligible because of the way the additional steps of the process integrated the equation into the process as a whole." *Mayo*, 132 S. Ct. at 1298 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); *see also Mayo*, 132 S. Ct. at 1300 ("It nowhere suggested that all these steps, or at least the combination of those steps, were in context obvious, already in use, or purely conventional."). In *Flook*, the Court found that a process was patent-ineligible because the additional steps of the process amounted to nothing more than "insignificant post-solution activity." *Diehr*, 450 U.S. at 191–92 (citing *Parker v. Flook*, 437 U.S. 584 (1978)).

A claim may become patent-eligible when the "claimed process include[s] not only a law of nature but also several unconventional steps . . . that confine[] the claims to a particular, useful application of the principle." *Mayo*, 132 S. Ct. at 1300; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("In particular, the '399 patent's claims

address the problem of retaining website visitors that, if adhering to the routine, conventional functioning of Internet hyperlink protocol, would be instantly transported away from a host's website after 'clicking' on an advertisement and activating a hyperlink."). A claim, however, remains patent-ineligible if it describes only "'post-solution activity' that is purely 'conventional or obvious.'" *Mayo*, 132 S. Ct. at 1299.

## ANALYSIS

In order to prevail on a § 101 challenge, the movant must show that the challenged claims first fail the "ineligible concept" step and then also fail the "inventive concept" step of the *Alice* test. In this case, J. Crew contends that all three of the patents-in-suit fail both steps.

### A.  The '715 Patent

Here, the Court finds that the '715 Patent is directed toward the abstract idea of combining data from two sources for delivery to a user. Claim 20 combines the basic steps of (a) acquiring data from two sources over a network, (b) combining or integrating those data, and (c) delivering them to a user on a computer. There are no meaningful limitations on any of these generic steps that render the claim any less abstract.

Figure 6 teaches the invention through the use of an exemplary website, americanexpress.com, which displays one embodiment of the invention: a single webpage simultaneously displaying private data (account balance) and public data (promotional information). While Figure 6 provides a useful example, it makes clear that the '715 Patent merely discloses the use of generic computer network technology to achieve an online variation of a well-established, real-world practice. Indeed, long before to the advent of online credit card billing, printed account statements resembling Figure 6's webpage were regularly mailed to credit card members. These printed statements similarly combined private account information

along with public promotional information. And, moreover, the public promotional information (e.g., an invitation to apply for a premium card) could certainly be "determined by" private account information (e.g., history of on-time payments), as required by claim 20.

Since the asserted claims of the '715 Patent are directed toward an abstract idea, the Court must next determine whether an inventive concept exists that is sufficient to transform the claims into patent-eligible subject matter. Such a transformation requires more than simply stating the abstract idea "while adding the words 'apply it,'" *Mayo*, 132 S. Ct. at 1294. Here, the Court finds that such an inventive concept is absent from the '715 Patent.

The claims' references to computer components are generic and tangential. For instance, the "network" recited by the claims is "any system for exchanging data or transacting business, such as the Internet, an intranet, an extranet, WAN, LAN, VPN (virtual private network), satellite communications, and/or the like." ('715 Patent, 4:48–52.) The "data store" limitation is likewise generic: "the data storage devices for the backend systems may be any type of data storage device, such as relational, hierarchical, object-oriented, and/or the like." (*Id.* at 5:51–53.) Combining generic data, from generic data stores, across generic networks does not reflect the necessary innovation to salvage this underlying abstract idea.

The only arguably inventive concepts disclosed by the '715 Patent are (1) the distinction between "public data" and "private data" and (2) the method by which public data is "determined by" private data. A review of the claims exposes these concepts as vague and uninventive. First, the distinction between public and private data is wholly subjective. Though the '715 Patent gives some examples of data one might consider to be private in nature, there is no specialized system or method used to assess the nature of the data or to treat the data differently based on its

content. The private/public dichotomy cannot supply the needed inventive concept because it is a qualitative distinction based on the content of the information.

Second, the "determined by" language alludes to rudimentary business logic, but it does not supply an inventive concept. This limitation suggests (without teaching) that a user of the invention may want to alter the public data to be displayed based on the content of the private data. For instance, one might offer one set of promotions to customers with high credit card balances and another set or promotions to customers with low credit card balances, and yet another set of promotions to customers with no recent account activity. This limitation does not provide the requisite inventive concept to transform the underlying abstract idea into patentable subject matter. *Alice*, 134 S. Ct. at 2355. Accordingly, the Court finds that the '715 Patent is directed at patent-ineligible subject matter under 35 U.S.C. § 101.

### B. The '370 Patent

The Court next finds that the '370 Patent is directed toward the abstract idea of recommending products to customers based on purchase history. Claim 1 discloses the basic steps of (a) receiving a customer request for a particular good or service; (b) storing information pertaining to the purchase history from previous customers; (c) comparing the customer request to the stored purchase history information to determine if there is a match; and (d) if a match exists, displaying the match to the customer. In sum, these steps teach the basic marketing concept of making product recommendations to a current customer based on the purchase history of other customers.

The typical sales clerk at a hardware store often performs these same steps. It is not difficult for a sales clerk who keeps a filing cabinet of past customer transactions. When a customer enters the store and requests a garden hose, the clerk simply searches his records and

discovers that customers who buy garden hoses often buy spray nozzles or sprinkler attachments. The clerk then suggests to the customer that she might be interested in buying a spray nozzle or a sprinkler attachment to go along with the garden hose. In such a case, the sales clerk would have then performed each and every step of the claimed method.

Citing the Federal Circuit's opinions in *Enfish* and *DDR Holdings*, Intellectual Ventures attempts to recast the '370 Patent as "an improved ecommerce recommendation system." (Dkt. No. 21 at 18.) The prior art disclosed methods of online product recommendations based on demographic profiles, such as age, gender, profession, etc. ('370 Patent, 2:19–25.) The profile-based approach had the disadvantage of requiring customers to divulge personal information to create a robust system. The '370 Patent improves upon the prior art by substituting the demographic profile data with purchase history data. However, this improvement does not represent "an improvement to computer functionality." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Refining the prior art by substituting one abstract idea for another does not result in a patent-eligible improvement.

In search of an inventive concept, the Court looks to the preamble to claim 1, which (even if assumed to be limiting) merely provides computer implementation of this abstract marketing idea. As *Alice* teaches, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." 134 S. Ct. at 1358. The computer components that adorn the preamble, such as a distributed network, an information processing system, and database storage, are inarguably generic. That is not to say that an invention's ability to run on a general-purpose computer necessarily "dooms the claims," but here, the '370 Patent discloses nothing more than an abstract marketing idea implemented by general computer

components. *See Enfish*, 822 F.3d at 1338. Therefore, the Court finds that the claims of the '370 Patent are directed toward patent-ineligible subject matter.

### C. The '324 Patent

J. Crew contends that the '324 Patent is directed toward the abstract idea of retrieving transaction records. (Mot. at 15.) In support of this contention, J. Crew characterizes claim one as merely reciting "(a) receiving and storing certain information; (b) receiving a request for that information; (c) retrieving that information; and (d) communicating that information." (*Id.* at 16.) J. Crew further alleges that these steps do not describe technical terms or special-purpose equipment, and therefore lack an inventive concept. (*Id.* at 16–17.)

Intellectual Ventures responds by characterizing the '324 Patent as "a concrete database system that uses a nonpredictable barcode to store and retrieve data from a database" (Resp. at 23) Intellectual Ventures further contends that the '324 Patent constitutes an improvement over the "shortcomings in the mid-1990s with accounting software such as Quicken." (*Id.*)

Having closely considered the '324 Patent and the parties' arguments, the Court concludes J. Crew has not met its burden under the *Alice* framework. J. Crew takes an overly generalized view of the claim language that vitiates meaningful limitations. *See SimpleAir, Inc. v. Google Inc.*, 136 F. Supp. 3d 745, 750 (E.D. Tex. 2015) ("Defendants do not explain how such a characterization, which ignores significant claim limitations, encompasses the invention claimed by the Patents-in-Suit."). J. Crew's recitation of the claims ignores (or at least evades) the elements of "nonpredictable bar code" and "transaction information associated with a nonpredictable bar code."

These elements place substantial limitations on the scope of the asserted claims. The specification and the prosecution history of the '324 Patent indicate that a bar code associated

11

with a particular transaction is "nonpredictable" if the bar code cannot be predicted or at least cannot feasibly be predicted. (*See* '324 Patent at 1:51–60.) Along these lines, the specification discloses examples that the bar code may be truly random (such that it is impossible to predict the bar code associated with particular transaction information) or the bar code may be "pseudorandom" such that even though it may be theoretically possible to predict the bar code as a practical matter it is simply too difficult to do so. (*See id.* at 3:28–36.)

J. Crew dismisses the nonpredictable bar code limitation because it was "known in the prior art." (Mot. at 18.) But a claim does not fail *Alice* scrutiny merely because it recites elements known in the prior art. Claim elements must be evaluated both individually and as an ordered combination. *See Mayo*, 132 S. Ct. at 1291; *Diamond v. Diehr*, 450 U.S. 175, 188 (1981) (patent claims "must be considered as a whole."). Here, the invention lies in the combined use of nonpredictable bar codes with transaction information. Far from conventional, this novel combination resulted in an improvement over the mid-1990s accounting software, which relied on manual entry of transaction information. (*See* '324 Patent at 1:35–50.) Furthermore, the specification teaches that using nonpredictable bar codes to transmit transaction information over a network constitutes a "significant improvement in that transaction data…can be accessed by an end user without concern by unauthorized parties." (*Id.* at 1:7–12); *see Enfish*, 822 F.3d at 1337 ("[O]ur conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teaching that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."). Considering all of the above, the Court is persuaded that the asserted claims of the '324 Patent are not directed to patent-ineligible subject matter.

with a particular transaction is "nonpredictable" if the bar code cannot be predicted or at least cannot feasibly be predicted. (*See* '324 Patent at 1:51–60.) Along these lines, the specification discloses examples that the bar code may be truly random (such that it is impossible to predict the bar code associated with particular transaction information) or the bar code may be "pseudorandom" such that even though it may be theoretically possible to predict the bar code as a practical matter it is simply too difficult to do so. (*See id.* at 3:28–36.)

J. Crew dismisses the nonpredictable bar code limitation because it was "known in the prior art." (Mot. at 18.) But a claim does not fail *Alice* scrutiny merely because it recites elements known in the prior art. Claim elements must be evaluated both individually and as an ordered combination. *See Mayo*, 132 S. Ct. at 1291; *Diamond v. Diehr*, 450 U.S. 175, 188 (1981) (patent claims "must be considered as a whole."). Here, the invention lies in the combined use of nonpredictable bar codes with transaction information. Far from conventional, this novel combination resulted in an improvement over the mid-1990s accounting software, which relied on manual entry of transaction information. (*See* '324 Patent at 1:35–50.) Furthermore, the specification teaches that using nonpredictable bar codes to transmit transaction information over a network constitutes a "significant improvement in that transaction data…can be accessed by an end user without concern by unauthorized parties." (*Id.* at 1:7–12); *see Enfish*, 822 F.3d at 1337 ("[O]ur conclusion that the claims are directed to an improvement of an existing technology is bolstered by the specification's teaching that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."). Considering all of the above, the Court is persuaded that the asserted claims of the '324 Patent are not directed to patent-ineligible subject matter.

## CONCLUSION

For the reasons set forth above, the Court holds that the claims of the '715 Patent and the '370 Patent are directed to ineligible subject matter and that the claims of the '324 Patent are not directed to ineligible subject matter under 35 U.S.C. § 101. Accordingly, the Court **GRANTS** J. Crew's Motion to Dismiss (Dkt. No. 11) with respect to the '715 Patent and '370 Patent and **DENIES** the motion with respect to the '324 Patent.

**So ORDERED and SIGNED this 24th day of August, 2016.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE